IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TRAVIUS TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14 CV 1283 SMY/RJD |
| | ) | |
| THOMAS MEZO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Before the Court is the Motion for Summary Judgment filed by Defendant Thomas Mezo. (Doc. 50.) Plaintiff is an inmate with the Illinois Department of Corrections. Defendant is a correctional officer employed by the Illinois Department of Corrections. On November 18, 2014, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging Defendant violated his constitutional rights. (Doc. 1.) Plaintiff proceeded on his Complaint with the following claims:

> **Count 1:** An Eighth Amendment claim of excessive force against Defendant Mezo for slamming Plaintiff's arm into the cell chuckhole and stabbing him with keys on February 13, 2014.
>
> **Count 2:** A state law claim of intentional infliction of emotional distress based on the incident described in Count 1.

Defendant seeks summary judgment on both counts. For the following reasons, Defendant's motion is **GRANTED**.

## BACKGROUND

Plaintiff is an inmate who was incarcerated at Menard Correctional Center. (Doc. 56-2 at 6.) Defendant Mezo worked as a correctional officer at Menard. (Doc. 56-6 at 8.) At Menard,

inmates are prohibited from placing their arms in cell chuckholes as an institutional safety measure to prevent inmates from stabbing, grabbing or throwing bodily fluids. (*Id.* at 87-88.)

On February 12, 2014, Plaintiff was moved into a cell in the segregation unit with prisoner Darrian Daniels, who had a history of physical altercations with his cellmates. (Doc. 56-2 at 21-22; Doc. 61-1.) On the morning of February 13, 2014, Daniels told Plaintiff that he would assault him if Plaintiff did not leave the cell. (Doc. 56-2 at 21.) When Defendant came by Plaintiff's cell, Plaintiff informed of Daniels' threat and requested a transfer. (*Id.* at 30.) Later that morning as Defendant distributed lunch trays, Plaintiff reiterated his request to Defendant who responded that he had notified the sergeant and proceeded down the hall. (*Id.* at 32-33.)

When Defendant returned to collect the trash, Plaintiff placed his arm in the chuckhole. (*Id.* at 34-35.) Defendant instructed Plaintiff to remove his arm from the chuckhole and Plaintiff replied that he would not until Defendant notified the sergeant or removed Plaintiff from the cell. (*Id.* at 35-36.) Defendant then said to Plaintiff, "We can either do this the hard way or the easy way," to which Plaintiff did not respond. (*Id.* at 38.) At that point, Defendant grabbed Plaintiff's arm, slammed it against the chuckhole four times, bent it and stabbed it with keys until Plaintiff removed his arm from the chuckhole. (*Id.* at 38-39.) Defendant then slammed the chuckhole closed and continued collecting trash. (*Id.* at 39.)

Following the incident, a physician assessed minimal lacerations of Plaintiff's right middle and ring fingers and decreased sensation in the right hand. He prescribed ibuprofen for pain. (Doc. 56-5.) Plaintiff has sought and received mental health treatment as a result of this incident and has been diagnosed with unspecified anxiety disorder. (Doc. 61-4.)

**DISCUSSION**

Defendant moves for summary judgment against Plaintiff on both counts. Federal Rule of Civil Procedure 56(a) states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court shall "examine the record and all reasonable inferences in the light most favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party." *Id.*

*Count 1- Excessive Force*

Defendant argues that he is entitled to summary judgment because he used force to restore order rather than to maliciously or sadistically to cause harm. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII. In excessive force cases, "[t]he central question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004). "In making that determination, several factors are relevant, including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Id.* at 504. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Whitley v. Albers*, 475 U.S. 312, 322 (1986).

Here, the record demonstrates that Defendant used force on Plaintiff as a direct response to Plaintiff's refusal to comply with a rule established for the purpose of institutional security. Although no evidence suggests that Plaintiff posed a particularly significant threat, the force applied seemed reasonably tailored to Plaintiff's repeated refusals to comply and Plaintiff's physical injuries were minor. Additionally, Defendant provided ample warning to Plaintiff prior to applying force and ceased using force immediately upon Plaintiff's compliance. On balance, the relevant factors weigh in favor of Defendant.

Plaintiff argues that summary judgment should not be granted because Plaintiff violated the chuckhole rule based on reasonable fear of his violent cellmate. Plaintiff cites to *Wilson v. Lambert*, 789 F.2d 656 (8th Cir. 1986), for the proposition that a prisoner's claim that he violated a rule to ensure personal safety is a relevant consideration for excessive force claims. Although *Wilson* refers to the prisoner's motive for violating the rule in the factual summary and affirms judgment for the prisoner, there is no substantive discussion of the prisoner's motive. Moreover, the facts in *Wilson* would support an excessive force claim in the absence of any motive. When the prisoner refused to return to the barracks, the guards struck him in the face, knocked him to the floor, kicked him as he lay on the floor, dragged him to another area and struck him in the face two or three more times, resulting in a bloody nose, a painful neck injury and two cracked teeth. *Id.* at 657.

Discipline and the safety of staff and inmates are of paramount concern to any correctional facility. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009); *Soto v. Dickey*, 744 F.2d 1260, 1266-67 (7th Cir. 1984). Indeed, discipline is essential for a correctional facility to function, and, to maintain discipline, orders must be obeyed regardless of whether an inmate believes he must obey them. *Lewis*, 581 F.3d at 677. If an inmate refuses an order, "some

means must be used to compel compliance." *Soto*, 744 F.2d at 1267. Here, Defendant repeatedly gave Plaintiff an order to comply with a rule established for purposes of institutional safety and Plaintiff refused. Therefore, some use of force was justified.

Plaintiff argues that even if some force was justified, the force used was still excessive. However, federal courts have granted and affirmed summary judgment in similar cases. *See e.g., Whitmore v. Alpert*, 2011 WL 1517452 (S.D. Ill. 2011)*; Lebron v. Wright*, 2005 WL 731058 (N.D. Ill. 2005). For instance, in *Walker v. Ahitow*, 9 F.3d 1549 (7th Cir. 1993), an inmate refused to remove his arm from the chuckhole and a correctional officer repeatedly ordered him to move his arm. *Id.* at *2. When the inmate refused, the officer threatened to break the inmate's arm and twisted and forced the arm back, resulting in scraping of the skin. *Id.* The Seventh Circuit held that unnecessary roughness does not equate to a constitutional violation and affirmed summary judgment in favor of the defendant based on the inmate's refusal to obey an order and the minor injuries. *Id.* at *1, *4. Similarly, in *White v. Matti*, 58 F. App'x 636, 637-38 (7th Cir. 2002), the Seventh Circuit upheld summary judgment on an excessive force claim in which an inmate refused to remove his arm from a chuckhole and the correctional officer beat the inmate's hand with a plastic medication box, resulting in lacerations, bruises, cuts and swelling.

The cases cited by Plaintiff are distinguishable. In several of the cases, the force and severity of the injury far exceeded the force and injury demonstrated here. *See Sallie v. Thiel*, 23 F. App'x 586, 588 (7th Cir. 2001) (severed finger); *Gilbert v. Collins*, 905 F.2d 61, 62 (5th Cir. 1990) (severed fingertip); *Thomas v. Northern*, 574 F. Supp. 2d 1029, 1032–33 (E.D. Mo. 2008) (heavy pepper spray and no opportunity to wash). Plaintiff has also cited cases indicating that no penological purpose is served when correctional officers impose force that prevents an inmate

5

from complying with an order. *See Nelson v. Sharp*, 182 F.3d 918, 918 (6th Cir. 1999) (correctional officer slamming door on hand then leaning on door to inflict injury); *Wilson v. Lee*, 2001 WL 1135900, *1 (N.D. Ill. 2001) (correctional officer grabbed an inmate's arm and slammed the chuckhole door shut on it for 15 to 20 minutes before other officers arrived and told him to release the inmate's arm). Relying on these cases, Plaintiff argues that the evidence demonstrates that Defendant actively resisted Plaintiff's efforts to withdraw his arm while continuing to injure Plaintiff. Plaintiff relies on his testimony that Defendant grabbed his arm. However, no evidence indicates that Plaintiff made any effort to withdraw his arm beyond the successful attempt that ended the use of force incident.

There is no evidence that Defendant applied force maliciously or sadistically for the purpose of causing harm rather than in a good faith effort to maintain discipline. Accordingly, Defendant's motion is granted with respect to Count 1.

*Count 2 - Intentional Infliction of Emotional Distress*

Defendant asserts that sovereign immunity bars Plaintiff's state law claim of intentional infliction of emotional distress. In response, Plaintiff maintains that the Seventh Circuit has held that state law cannot deprive federal courts of jurisdiction over state law claims. *See Fields v. Wharrie,* 672 F.3d 505, 518 (7th Cir. 2012)*; Rodriguez v. Cook Cty., Ill.,* 664 F.3d 627, 631–32 (7th Cir. 2011). Although sovereign immunity does not deprive federal courts of jurisdiction, state sovereign immunity law applies to state-law causes of action brought in federal court against state officials. *Magdziak v. Byrd*, 96 F.3d 1045, 1048 (7th Cir. 1996).

Under the Illinois State Lawsuit Immunity Act ("ISLIA"), 745 Ill. Comp. Stat. 5/0.01 *et seq.,* the State of Illinois "shall not be made a defendant or party in any court" except as provided in either the Illinois Public Labor Relations Act, 5 Ill. Comp. Stat. 315/1 *et seq.,* or the Illinois

Court of Claims Act, 705 Ill. Comp. Stat. 505/1 *et seq.* 745 Ill. Comp. Stat. 5/1.  The Court of Claims Act vests exclusive jurisdiction in the Court of Claims in all actions "against the State founded upon any law of the State of Illinois" and "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 Ill. Comp. Stat. 505/8(a), (d).

"While sovereign immunity dictates that the State can be sued only in the Court of Claims, the determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties." *In re Lawrence M.,* 670 N.E.2d 710, 713 (Ill. 1996).  Thus, sovereign immunity cannot be avoided "by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Sass v. Kramer,* 381 N.E.2d 975, 977 (Ill. 1978).  A claim against an individual will be considered a claim against the State of Illinois, even when the individual is sued in his or her individual capacity, if "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Loman v. Freeman,* 890 N.E.2d 446, 453 (Ill. 2008); *Feldman v. Ho,* 171 F.3d 494, 498 (7th Cir.1999).  Specifically, an action is against the State of Illinois for sovereign immunity purposes when:

> [T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Sneed v. Howell,* 716 N.E.2d 336, 340 (Ill. App. Ct. 1999).

With respect to the first prong of the test, "[a]n employee's actions are considered within the scope of employment where the alleged facts are consistent with an intent to further the

state's business." *Sellers v. Rudert,* 918 N.E.2d 586, 592 (Ill. App. Ct. 2009). "[A]n employee who breaks workplace rules, performs his or her duties with willful and wanton indifference, or even violates a statute does not necessarily act outside the scope of his or her state employment." *Id.* A plaintiff seeking to sue employees of an Illinois state agency must show that the defendant harbored personal animosity toward the plaintiff or that they committed the alleged acts for reasons other than what the defendant perceived to be in the best interests of the state agency. *Cortright v. Doyle,* 898 N.E.2d 1153, 1160 (Ill. App. Ct. 2008). "When the Illinois courts speak of an act 'beyond the scope of authority,' they contemplate an employee acting not just in a wrongful manner, but sticking his nose in business where it doesn't belong." *Turpin v. Koropchak,* 567 F.3d 880, 883 (7th Cir. 2009).

Here, the facts indicate that Defendant acted with the intent of enforcing department rules rather than from personal animosity or for an improper purpose. By applying force, Defendant acted pursuant to a duty that arose from his status as a correctional officer and Plaintiff's status as an inmate at Menard Correctional Center. *See Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002); *Perkinson v. Illinois State Police*, 2016 WL 1321197, at *11 (S.D. Ill. 2016); *Welch v. Illinois Supreme Court*, 751 N.E.2d 1187, 1194-95 (2001). Additionally, Defendant's conduct was consistent with the official state functions of enforcing departmental rules and maintaining discipline at a correctional center. Therefore, Plaintiff's claim is against the state for sovereign immunity purposes, and sovereign immunity bars Plaintiff's claim. Defendant's motion is also granted as to Count 2.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 50) is **GRANTED** in its entirety and Plaintiff's claims against Defendant Thomas Mezo are

**DISMISSED with prejudice**.   The  Clerk  of  Court  is  **DIRECTED** to  enter  judgment accordingly.


**SO ORDERED.**

**DATED: November 21, 2016**

                <u>**s/ Staci M. Yandle**</u>
                **STACI M. YANDLE**
                **United States District Judge**